IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DATA CARRIERS, LLC, | : |
| Plaintiff, | : |
| v. | : C.A. 1:12-cv-00942-LPS |
| | : **JURY TRIAL DEMANDED** |
| NEWEGG INC. | : |
| Defendant. | : |

## DEFENDANT NEWEGG INC.'S ANSWER AND COUNTERCLAIMS

Defendant Newegg Inc. (hereinafter "Newegg" or "Defendant"), by and through its undersigned counsel, hereby answers the Complaint of Data Carriers, LLC (hereinafter "Data Carriers" or "Plaintiff") filed on July 19, 2012, as follows:

1. Newegg is without sufficient information to either admit or deny the averments of this paragraph of the Complaint, and on this basis denies said averments.

2. Admitted.

3. This paragraph states a legal conclusion regarding subject matter jurisdiction to which no response is required.

4. This paragraph states a legal conclusion regarding personal jurisdiction to which no response is required. Newegg admits that it is a Delaware corporation that has done business in this District. Newegg denies that it has committed acts of infringement in this District or any other District. Newegg denies that it has caused any harm to Data Carriers in this District or any other District.

5. This paragraph states legal conclusions regarding venue and personal jurisdiction to which no response is required. Newegg admits that it is a Delaware corporation. Newegg denies that it has committed acts of infringement in this District or any other District.

6. Newegg admits only that the recited patent number, title, filing date, issue date, and original assignee match the information on the face of the patent document attached as Exhibit A to the Complaint. Newegg is without sufficient information to either admit or deny the veracity of this information or of the remaining averments of this paragraph of the Complaint, and on this basis denies said averments.

7. This paragraph states a legal conclusion regarding infringement and injury to which no response is required. To the extent a response is required, the averments of this paragraph are denied.

8. This paragraph states a legal conclusion regarding infringement to which no response is required. To the extent a response is required, the averments of this paragraph are denied.

9. This paragraph states a legal conclusion regarding infringement and damages to which no response is required. To the extent a response is required, the averments of this paragraph are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim)

The Complaint, and each and every purported claim for relief therein, fails to allege facts sufficient to state a claim against Newegg.

### SECOND AFFIRMATIVE DEFENSE
(Noninfringement)

Newegg has not infringed and is not infringing the asserted '198 patent under any theory, including direct infringement, infringement by inducement, or contributory infringement.

### THIRD AFFIRMATIVE DEFENSE
(Invalidity)

The '198 patent and all of the claims thereof are invalid for failure to comply with one or more of the requirements for patentability, including those set forth in the Patent Act, 35 U.S.C. §§ 1 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### FOURTH AFFIRMATIVE DEFENSE
(Estoppel)

Plaintiff is estopped from claiming that the '198 patent covers any method, system, apparatus, or product of Newegg by virtue of prior art and/or prosecution history.

### FIFTH AFFIRMATIVE DEFENSE
(Limitation on Damages)

To the extent that Plaintiff seeks damages for any alleged infringement more than six years before the filing of this action, the claims are barred by the statutory limitation on damages pursuant to 35 U.S.C. § 286.

## SIXTH AFFIRMATIVE DEFENSE
### (Waiver, Laches, and Acquiescence)

Plaintiff's claims for damages and other relief are barred in whole or in part by the equitable doctrines of waiver, laches, and/or acquiescence, including but not limited to Plaintiff's (including Plaintiff's predecessors, assignors, etc.) unreasonable delay in asserting the '198 patent against Newegg.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Mark and/or Provide Notice)

To the extent that Plaintiff seeks damages for any alleged infringement prior to the marking of a product covered by the '198 patent, or prior to Plaintiff's giving actual notice of the '198 patent to Newegg, its claims are barred pursuant to 35 U.S.C. § 287(a).

## EIGHTH AFFIRMATIVE DEFENSE
### (License / Exhaustion)

Plaintiff is barred from enforcing the '198 Patent against Newegg. Under the doctrines of patent exhaustion, implied or express license, estoppel, and have-made rights, the use or sale of products by and/or the use or sale of products supplied by licensees cannot give rise to liability for infringement of such patents.

## NEWEGG'S PRAYER FOR RELIEF ON PLAINTIFF'S COMPLAINT

WHEREFORE, Newegg respectfully requests that the Court enter judgment in favor of Newegg and against Plaintiff, as follows:

A. that Plaintiff takes nothing by the Complaint and that the Complaint be dismissed with prejudice;

B. that Newegg does not infringe and has not infringed any claim of the '198 patent under any theory;

C. that each asserted claim of the '198 patent is invalid and/or unenforceable;

4

D. that no injunctive relief shall issue in favor of Plaintiff;

E. that no damages shall be awarded to Plaintiff;

F. that no costs, expenses, or attorneys' fees shall be awarded to Plaintiff;

G. that no other relief shall be awarded to Plaintiff;

H. that this case is declared exceptional pursuant to 35 U.S.C. § 285 and that attorneys' fees shall be awarded to Newegg;

I. that costs and expenses shall be awarded to Newegg; and

J. that such other and further relief as the Court deems just and proper shall be awarded to Newegg.

# NEWEGG INC.'S COUNTERCLAIMS

## PARTIES

1. Newegg Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 16839 E. Gale Avenue, City of Industry, California 91745.

2. As stated in its Complaint, Data Carriers is a limited liability company having a principal place of business at 4023 Kennett Pike, Suite 531, Wilmington, Delaware 19807-2018.

3. Upon information and belief, IP Navigation Group, LLC ("IP Nav") is a Texas limited liability corporation having its principal place of business at Chateau Plaza, 2515 McKinney Ave, Suite 1000, Dallas, TX 75201.

## JURISDICTION AND VENUE

4. There is a justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Data Carriers and Newegg regarding the noninfringement and invalidity of the '198 patent because Data Carriers has asserted that it is the owner of the '198 patent and that Newegg infringes the '198 patent.

5. This Court has personal jurisdiction over Data Carriers because, *inter alia*, Data Carriers has submitted itself to the jurisdiction of this Court by filing the Complaint and Demand for Jury Trial in this Court.

6. This Court has personal jurisdiction over IP Nav because upon information and belief, *inter alia*, IP Nav has purposefully availed itself of the laws and protections of Delaware by filing or causing to be filed 49 patent infringement lawsuits in this district, and IP Nav engaged in abuse of process causing harm to Newegg by filing and forwarding the present

Complaint to Newegg, which is a Delaware corporation, as explained in more detail below in Count III.

7. Newegg brings these Counterclaims under the Patent Laws of the United States, 35 U.S.C. § 1, et seq., the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Delaware law. This Court has jurisdiction over the subject matter of these Counterclaims under 28 U.S.C. §§ 1331, 1338 and 1367.

8. Upon information and belief, venue for these Counterclaims is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400, and under the doctrine of pendent venue. Venue is further proper in the District of Delaware because Data Carriers, via its agent IP Nav, has consented to the propriety of venue in this judicial district by filing its present claim for infringement of the '198 patent in this Court.

## COUNT I
### (Declaratory Judgment of Non-Infringement)

9. Newegg repeats and realleges each and every allegation from paragraphs 1-8 of its Counterclaims as if fully set forth herein.

10. As evidenced by its Complaint, Data Carriers purports to own the '198 patent and has asserted that certain acts by Newegg Inc. infringe the '198 patent.

11. Newegg has not infringed and is not infringing, in any way, any claim of the '198 patent.

12. On information and belief, absent a declaration of non-infringement, Data Carriers will continue to wrongfully assert the '198 patent against Newegg, and thereby cause Newegg irreparable injury and damage.

13. Under the circumstances, there is a substantial controversy between parties having adverse legal interests that is of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment. Moreover, principles of fair play and substantial justice require that the controversy be resolved in this judicial forum.

14. To resolve the legal and factual questions raised by Data Carriers, and to afford relief from the uncertainty and controversy that Data Carriers's representations have caused, Newegg is entitled to a declaratory judgment that it does not infringe any claim of the '198 patent.

15. This is an exceptional case and Newegg should receive an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNT II
**(Declaratory Judgment of Invalidity)**

16. Newegg repeats and realleges each and every allegation from paragraphs 1-15 of its Counterclaims as if fully set forth herein.

17. Some or all of the claims of the '198 patent are invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 256 and/or 305, and one or more sections of Title 37, Code of Federal Regulations.

18. Upon information and belief, absent a declaration of invalidity, Data Carriers will continue to wrongfully assert claims of the '198 patent against Newegg and thereby cause Newegg irreparable injury and damage.

19. To resolve the legal and factual questions raised by Data Carriers, and to afford relief from the uncertainty and controversy that Data Carriers's representations have caused, Newegg is entitled to a declaratory judgment that some or all of the claims of the '198 patent are invalid.

## COUNT III
### (Abuse of Process Under Delaware Law)

20. Newegg repeats and realleges each and every allegation from paragraphs 1-19 of its Counterclaims as if fully set forth herein.

21. IP Nav is a "patent monetization" firm that works with and for various patent holding companies. Upon information and belief, IP Nav exists primarily to assert those companies' patents in litigation in attempt to secure favorable monetary settlements or judgments. Erich Spangenberg is the Chairman of IP Nav and David Pridham is the Chief Executive Officer of IP Nav.

22. On or about May 14, 2010, Erich Spangenberg was interviewed for Corporate Counsel magazine. A subsequent article for the magazine based on the interview, dated May 21, 2010, entitled "Patent Litigation Weekly: Spangenberg Speaks, Says Sue First, Ask Questions Later," explained that IP Nav's business model involves filing a complaint for patent infringement against a target company before engaging in any communications with the company regarding the patent, the company's business, or the alleged infringement. Erich Spangenberg indicated to the journalist that this allows him to secure a litigation venue where the largest verdicts are likely to obtained upon a finding of infringement, even if his chances of prevailing in the suit are greater elsewhere. A true and correct copy of this magazine article is attached hereto as Exhibit A.

23. Newegg is currently defending against many patent infringement lawsuits, including the following: (1) *SFA Systems, LLC v. 1-800 Flowers.com, Inc. et al.*, No. 6:09-cv-00340-LED (E.D. Tex., Complaint filed July 28, 2009) (consolidated with *SFA Systems, LLC v. Barnes & Noble, Inc. et al.*, No. 6:11-cv-00399-LED (E.D. Tex., Complaint Filed August 1, 2011)); and (2) *TQP Development, LLC v. 1-800 Flowers.com, Inc. et al.*, No. 2:11-cv-00248-

MHS-CMC (E.D. Tex., Complaint filed May 6, 2011). Like the present Complaint, both of these lawsuits accuse aspects of Newegg's website of infringement.

24. Upon information and belief, the plaintiffs in the two actions noted in paragraph 23, SFA Systems, LLC ("SFA") and TQP Development, LLC ("TQP") are shell holding companies created directly or indirectly by Erich Spangenberg that make and sell no products or services, but exist solely for the purpose of acquiring and owning patents to monetize them, particularly by suing companies for infringement in hopes of securing a monetary settlement license or judgment. Upon information and belief, SFA and TQP are owned or controlled directly or indirectly by Erich Spangenberg, and the management of the "patent monetization" for SFA and TQP is handled by their agent—IP Nav.

25. The *SFA* and *TQP* patent infringement litigations are exceedingly complex and costly to defend. Moreover, the discovery burden is heavy and disproportionately falls on Newegg and its co-defendants in these cases. For example, while defendants like Newegg must provide documents and information in intricate detail as to how their accused systems operate and have operated over time, SFA and TQP only recently acquired their respective patents-in-suit and do not engage in business activity other than lawsuits and licensing negotiations (and thus have little discoverable information concerning the patents or the validity thereof). With Data Carriers having only acquired the patents on March 16, 2012, Newegg believes that the present lawsuit will likewise impose a disproportionately heavy discovery burden on Newegg.

26. Regarding the *SFA* and *TQP* litigations noted in paragraph 23, Newegg had no knowledge of the respective plaintiffs or patents-in-suit prior to the filings of the complaints. Newegg received no communications whatsoever from SFA, TQP, or IP Nav relating to Newegg's website or the asserted patents before the *SFA* and *TQP* lawsuits were filed. It was

not until after the litigation had begun that SFA and TQP reached out to Newegg, via IP Nav, to attempt to obtain a settlement that would include license fees paid by Newegg. Further, SFA and TQP, via IP Nav, have made "bundled" offers to Newegg that would settle both cases together and simultaneously, but Newegg has declined such offers and continues to defend against the infringement allegations, which it believes are unfounded. Upon information and belief, the history and current status of these settlement negotiations are known to Data Carriers and IP Nav.

27. Newegg has been sued for patent infringement by various other third party entities that are solely in the business of asserting patents to secure settlement license fees, and who file lawsuits without first communicating with Newegg, only to later demand a settlement license and thereby offer Newegg a way out of protracted litigation. Newegg has in the past refused to settle such cases where it believes the infringement allegations are without merit, and where the litigation tactics are coercively designed to force settlements, and has defended against such cases through trial and on appeal. Upon information and belief, Data Carriers and IP Nav are aware that Newegg has refused to settle patent infringement lawsuits brought by such similarly situated plaintiffs in the past.

28. Upon information and belief, Data Carriers is another shell patent holding company created, owned, and/or controlled, directly or indirectly, by Erich Spangenberg, and whose patents are "monetized" by Data Carriers's agent—IP Nav.

29. On July 20, 2012, the day after Data Carriers filed its Complaint against Newegg, David Pridham sent a letter to Bob Bellack, Chief Executive Officer of Newegg. This letter was sent on behalf of "[IP Nav's] client, Data Carriers," referenced and attached the Complaint, stated without explanation that "the '198 patent is clearly practiced by Newegg, Inc.," and

represented that "[i]t is [Data Carriers's] desire to avoid the need for protracted litigation, and they remain open to discussing a license to the '198 patent." A true and correct copy of this letter is attached hereto as Exhibit B.

30. Prior to the filing of the Complaint, Newegg had no knowledge of Data Carriers or of the '198 patent. Neither Data Carriers, nor IP Nav, nor their respective counsel communicated with Newegg in any way relating to Newegg's website or the '198 patent until the July 20, 2012 letter.

31. Upon information and belief, SFA, TQP, and Data Carriers are related companies, at least in terms of their all being created, owned, and/or controlled, directly or indirectly, by Erich Spangenberg. Between these three corporate entities, Newegg has been sued three times, in disparate venues, over different patents, and in a staggered time frame so that each case is in a different phase of litigation, which results in increased inefficiencies and greater taxes on Newegg's and its counsel's resources to put up defenses. Upon information and belief, the status and stage of each of these cases is known to Data Carriers and IP Nav.

32. Upon information and belief, the asserted claims of the patent include various elements directed to the back-end system configuration and the particular programming thereof, the structure, coding, and functionality of which cannot be adequately determined from publicly available information to conclude that Newegg's system satisfies each and every claim limitation in the '198 patent. Nevertheless, Data Carriers, following its agent's (IP Nav's) typical practice to "sue first, ask questions later" (*see* ¶ 22), filed the present lawsuit without obtaining any information (at least, not by any candid and lawful means of which Newegg is aware) from Newegg about the internal structure and operation of Newegg's system other than what is publicly available. Thus, Newegg was not given any opportunity before this lawsuit was filed to

understand the conclusory allegations of patent infringement contained in the Complaint and follow-up letter from David Pridham, nor was Newegg asked to demonstrate to Data Carriers or IP Nav how its system works.

33. Upon information and belief, SFA, TQP, Data Carriers, IP Nav, Erich Spangenberg, and David Pridham are collectively involved in a business model that makes and sells no products or services, but which acquires and asserts patents, typically against multiple market participants within an industry at a time, in order to secure quick settlements that reflect the nuisance value of the litigation to the accused infringer, rather than any actual harm caused by the defendants. Such a business model is typical of entities that are colloquially known as "patent trolls." For patent trolls, obtaining nuisance value settlements prevents the validity of the asserted patent(s) or any infringement allegations from being adjudicated, and provides funding for litigation in the event that one or more defendants choose to incur the expense of defending themselves. Thus, prolonged defense of a lawsuit detracts from a patent troll's only source of revenues.

34. On March 16, 2012, the day that the '198 patent was assigned to Data Carriers, and the day after Data Carriers's date of incorporation as a Limited Liability Company in Delaware, Data Carriers filed 24 lawsuits asserting the '198 patent against additional online retailers, service providers, and electronics companies, including Amazon.com, Inc., Apple, Inc., Dell Inc., Hewlett-Packard Co., and Samsung Electronics America, Inc.

35. On July 19, 2012, the same day that the present Complaint was filed against Newegg, Data Carriers filed 18 other lawsuits asserting the same '198 patent against other online retailers and service providers, including Buy.com, Inc., Netflix, Inc. Office Depot, Inc., Overstock.com, Inc., Target Corp., and Home Depot, Inc.

36. On July 20, 2012, Data Carriers filed 5 lawsuits asserting the same '198 patent against additional online retailers and service providers, including Wal-Mart Stores, Inc., Walgreen Co., and Yelp Inc.

37. On July 27, 2012, Data Carriers filed a lawsuit asserting the same '198 patent against electronics company ZTE (USA) Inc.

38. As evidenced by its 49 lawsuits, Data Carriers is engaged in an extensive campaign to sue a wide variety of commercially successful entities having a significant online presence. Upon information and belief, the entire lawsuit campaign is being managed and controlled, directly or indirectly, by IP Nav, Erich Spangenberg, and David Pridham, in an effort to obtain quick nuisance value settlements.

39. In a June 25, 2012 press release, IP Nav announced that it was holding an event on July 26, 2012 to auction off covenants not to sue various defendants of patent infringement litigations. A true and correct copy of this press release (posted to IP Nav's website at http://www.ipnav.com/resource-center/news-and-events via a link to http://www.bizjournals.com/prnewswire/press_releases/2012/06/25/CG29404) is attached hereto as Exhibit C. The auction centered around the defendants in various patent infringement lawsuits brought by "clients of IP Nav," including the *SFA* and *TQP* matters discussed above in paragraphs 23-26, and the 24 lawsuits filed by Data Carriers on March 16, 2012, discussed above in paragraph 34. The auction was presented as "an elegant and anonymous way to exit patent litigation quickly and in a cost effective way." The press release explained that "[t]here are over 140 defendants in these litigations, yet only a handful of [covenants not to sue] will be available at auction." Newegg was expressly named in connection with the *SFA* and *TQP* matters in the press release, and so Newegg stood to benefit from the acquisition of a covenant not to be sued

in those matters. Because the press release was issued prior to Data Carriers's present Complaint being filed against Newegg, but the auction was scheduled to be held after Data Carriers's present Complaint was filed, the auction did not ostensibly offer a covenant not to sue Newegg in connection with this present case. The press release quotes Erich Spangenberg as stating that "IPNav has chosen Dean and the ICAP Team [i.e., the organizers of the auction] to continue with our previous successes working together."

40. Upon information and belief, the purpose of the July 26, 2012 auction was to entice Newegg and the other named defendants to appear directly or via proxy to bid on the right to be released from the lawsuits filed by IP Nav on behalf of SFA, TQP, and Data Carriers. Upon information and belief, the available covenants not to sue would be awarded to the highest bidder(s), rather than reflect the existence or amount of the bidding defendant's liability to SFA, TQP, or Data Carriers. In Newegg's view, this auction constitutes a perverse abuse of the American justice system, and is a perfect vignette to highlight the improper and coercive purposes for which the present Data Carriers lawsuit was filed and wielded against Newegg.

41. Upon information and belief, Data Carriers and IP Nav, acting on behalf of Data Carriers and within the scope of IP Nav's actual or apparent authority, initiated this present lawsuit for an ulterior purpose, and willfully filed and wielded the Complaint in a manner improper in the regular conduct of proceedings including, *inter alia*, the following. Upon information and belief, Data Carriers and IP Nav filed this lawsuit and sent the Complaint to Newegg to coerce a settlement and license fee, having no desire to justify its allegations of patent infringement, knowing that Newegg would incur substantial costs to defend against the infringement allegations, and knowing that Newegg cannot extricate itself from the litigation without Data Carriers's consent. Upon information and belief, Data Carriers and IP Nav also

filed this lawsuit and sent the Complaint to Newegg in attempt to obtain a settlement in the amount of a nuisance value to Newegg, regardless of whether any liability or damages was believed to exist, knowing that Newegg would incur substantial costs to defend against the infringement allegations, and knowing that Newegg cannot extricate itself from the litigation without Data Carriers's consent. Upon information and belief, Data Carriers and IP Nav also filed this lawsuit and sent the Complaint to Newegg to further tax Newegg's and its counsel's resources available to defend against patent infringement accusations, and thereby coerce a settlement in the *SFA* and *TQP* matters, in addition or in the alternative to the present Data Carriers matter. Upon information and belief, Data Carriers and IP Nav also filed this lawsuit and sent the Complaint to Newegg in an effort to coerce Newegg to attend the then-anticipated July 26, 2012 auction and/or future auctions to bid on a covenant not to be sued. Upon information and belief, Data Carriers and IP Nav also filed this lawsuit in order to add another covenant not to sue Newegg to the inventory up for auction by IP Nav at the July 26, 2012 auction and/or future auctions. Upon information and belief, Data Carriers and IP Nav also filed this and the other Data Carriers lawsuits which were initiated on the same day or shortly thereafter in order to add additional lawsuits and defendants to the inventory up for auction by IP Nav at the July 26, 2012 auction and/or future auctions, thereby hoping to increase the demand for, and the price of, the limited number of covenants to be auctioned by IP Nav. Upon information and belief, each and all of the above ulterior purposes for Data Carriers's and IP Nav's use of process were improper and sought to obtain a collateral advantage, and Data Carriers's and IP Nav's actions with respect to process were willful and improper in the ordinary conduct of proceedings.

42. This Court has personal jurisdiction over IP Nav at least by virtue of IP Nav's involvement in a scheme of filing 49 separate lawsuits against various entities, whereby IP Nav purposefully availed itself of the benefits of protections of Delaware law and this Court. Moreover, IP Nav's facilitating the initiation of a lawsuit and coercive settlement negotiations against Newegg, a Delaware corporation, directly targeted its conduct toward this forum. Exercising jurisdiction over IP Nav under these circumstances comports with traditional notions of fair play and substantial justice.

43. IP Nav is properly joined with Data Carriers as a counterclaim defendant, pursuant to Federal Rules of Civil Procedure 13 and 20, for this abuse of process claim because Newegg's right to relief is asserted against IP Nav and Data Carriers jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, as described above. At least one common question of law or fact between IP Nav and Data Carriers will necessarily be resolved in adjudicating Newegg's abuse of process claim.

44. Newegg has been, and is, harmed by the abuse of process by Data Carriers and IP Nav, and will continue to be harmed by the further litigation and process in this case unless and until Data Carriers and IP Nav are enjoined by this Court.

## NEWEGG'S PRAYER FOR RELIEF ON ITS COUNTERCLAIMS

WHEREFORE, Newegg respectfully requests that the Court enter judgment in favor of Newegg and against Data Carriers, and grant the following relief:

A. a declaration that Newegg has not infringed and does not infringe, either directly or indirectly, any claim of U.S. Patent No. 5,388,198;

B. a declaration that some or all claims of U.S. Patent No. 5,388,198 are invalid;

C. a declaration that Data Carriers shall take nothing by way of its Complaint;

D. dismissal with prejudice of the claims of Data Carriers's Complaint, in their entirety;

E. an order awarding Newegg its costs pursuant to 35 U.S.C. § 284;

F. an order finding that this is an exceptional case and awarding Newegg its reasonable attorney's fees pursuant to 35 U.S.C. § 285 and other applicable statutes, rules, and law;

G. an order enjoining Data Carriers, its owners, agents, employees, attorneys, representatives, and any successors or assigns thereof, from charging or asserting infringement of any claim of U.S. Patent No. 5,388,198 against Newegg or anyone in privity with Newegg;

H. an order imposing appropriate sanctions against Data Carriers, IP Nav, and/or its counsel, including sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927; and

I. such other and additional relief as the Court may deem just and proper.

## RESERVATION OF RIGHTS

Newegg reserves the right to add any additional defenses and/or counterclaims that discovery may reveal.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38(b), Newegg respectfully requests a trial by jury on all matters raised in its Answer, Defenses, and Counterclaims, or in Plaintiff's Complaint and Demand for Jury Trial.

                                    PROCTOR HEYMAN LLP

                                    */s/ Dominick T. Gattuso*
                                    Dominick T. Gattuso (# 3630)
                                    E-mail: dgattuso@proctorheyman.com
                                    300 Delaware Avenue, Suite 200
                                    Wilmington, DE 19801
                                    (302) 472-7300

                                    Attorneys for Newegg Inc.

OF COUNSEL:

THE WEBB LAW FIRM
Kent E. Baldauf, Jr.
E-mail: KBaldaufjr@webblaw.com
Bryan P. Clark
E-mail: BClark@webblaw.com
Daniel H. Brean
E-mail: DBrean@webblaw.com
One Gateway Center
420 Ft. Duquesne Boulevard, Suite 1200
Pittsburgh, PA 15222
(412) 471-8815

Dated: August 13, 2012