# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DATA CARRIERS, LLC,<br><br>   Plaintiff,<br><br>          v.<br><br>NEWEGG INC.,<br><br>   Defendant.<br><br>NEWEGG INC.,<br><br>   Counterclaimant,<br><br>          v.<br><br>DATA CARRIERS, LLC AND IP NAVIGATION GROUP, LLC,<br><br>   Counterdefendants. | C.A. No. 12-942-LPS |

## DATA CARRIERS LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD CLAIM FOR RELIEF IN NEWEGG INC'S FIRST AMENDED COUNTERCLAIM

November 30, 2012

OF COUNSEL:

Marc A. Fenster
Benjamin T. Wang
Adam S. Hoffman
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025-1031
(310) 826-7474
mfenster@raklaw.com
bwang@raklaw.com
ahoffman@raklaw.com

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

**ATTORNEYS FOR PLAINTIFF
DATA CARRIERS, LLC**

# TABLE OF CONTENTS

| | | Page |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | SUMMARY OF ARGUMENT | 1 |
| III. | BACKGROUND | 4 |
| IV. | LEGAL STANDARD | 6 |
| V. | ARGUMENT | 7 |
| VI. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) ............................................................................................................6

*Bayer AG v. Sony Elecs.,*
　229 F. Supp. 2d 332 (D. Del. 2002) ............................................................................2, 4, 7

*Bell Atlantic Corp. v. Twombly,*
　550 U.S. 544 (2007) ............................................................................................................6

*GN Netcom, Inc. v. Callpod, Inc.,*
　2012 U.S. Dist. LEXIS 132001 (D. Colo. Sept. 17, 2012) .............................................2, 3

*Houlihan v. Sussex Tech. School Dist.,*
　461 F. Supp. 2d 252 (D. Del. 2006) ....................................................................................6

*Neitzke v. Williams,*
　490 U.S. 319 (1989) ............................................................................................................6

*Nix v. Sawyer,*
　466 A.2d 407 (Del. Super. 1983) ........................................................................................8

*Read v. Carpenter,*
　1995 WL 945544 (Del. Super. June 8, 1995) .....................................................................8

*Rollins Intern. Inc. v. International Hydronics Crop.*
　303 A.D.2d 660 (Del. 1973) ................................................................................................9

*RRR Farms, LTD v. Am. Horse Protection Ass'n, Inc.,*
　957 S.W.2d 121 (Tex. App. 1997) ......................................................................................8

*Spence v. Spence,*
　2012 Del. Super. LEXIS 188 (Del. Super. Ct. Apr. 20, 2012) ...................................6, 7, 8

**STATUTES**

28 U.S.C. § 1927 ..........................................................................................................................1

28 U.S.C. §2201(a) ......................................................................................................................9

35 U.S.C. § 271(a) .......................................................................................................................2

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 11 ................................................................................................1

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................6

## I. INTRODUCTION

Defendant and counterclaimant Newegg Inc.'s ("Newegg") third counterclaim in its First Amended Answer and Counterclaims purports to state a claim for abuse of process under Delaware law. This is the second time Newegg has attempted to state such a claim. On its first attempt, Data Carriers and third-party counterclaim defendant IP Navigation Group, LLC ("IP Nav") filed motions to dismiss because there is no legal or factual basis for an abuse of process claim. Instead of disputing those motions, Newegg amended its abuse of process counterclaim to, it asserts, "address[] all of the issues raised in Data Carriers's and IP Nav's [previously filed] motions to dismiss." (Ex. A.) But Newegg's revisions are no cure. Despite adding 11 new paragraphs (D.I. 20 ¶¶ 25-27; 32-35; 37; & 48-50),[1] none of those new paragraphs addresses the fundamental question of how the legal owner of a presumptively valid patent abuses process by exercising its statutory right to seek remedies for infringement of that patent. Instead, Newegg has merely added paragraphs that attempt to suggest that Data Carriers and two other plaintiffs in cases against Newegg are or were commonly "created, owned, managed, and/or controlled," and that the suggested mastermind behind these entities had some involvement in a breach of contract case in Wisconsin. (*Id.*) Even assuming those allegations are correct for purposes of this motion, they do not and cannot deprive Data Carriers of its right to enforce its patent, and having now twice-attempted to state a claim for abuse of process, Newegg's current attempt should be dismissed with prejudice.

## II. SUMMARY OF ARGUMENT

Newegg contends that the current lawsuit is an abuse of process by Data Carriers and IP Nav because the suit was allegedly brought to "coerce a settlement" and coerce Newegg's

---

[1] Newegg appears to have made additional minor changes to wording and to correct typographical errors that are not relevant to the present motion, and has also dropped its prayer for relief seeking sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

participation in a past or future auction of covenants not to sue. (D.I. 20 ¶ 51.) In particular, Newegg contends that this suit is part of a three-suit "campaign" to coerce Newegg to settle, involving two other patent cases involving Newegg brought by plaintiffs unrelated to Data Carriers, concerning patents unrelated to the patent in this suit. (*Id.* ¶¶ 38, 40, 45.) The past auction alleged by Newegg involved covenants not to sue covering lawsuits brought by certain "clients of IPNav," including the two other patent cases involving Newegg, but not this present suit, and the future auctions presumably relate to any cases involving Newegg and IP Nav. (*Id.* ¶ 46 & Ex. O.)

As with its original pleading, Newegg's amended counterclaim fails to state a claim for abuse of process. First, as Newegg itself acknowledges in its counterclaims, Data Carriers is the owner of the patent-in-suit (the "'198 patent"). (*Id.* ¶¶ 4 & 10.) Data Carriers, therefore, has a statutory right to enforce the patent against any party that "without authority makes, uses, offers to sell, or sells [the] patented invention …." 35 U.S.C. § 271(a). This Court has previously acknowledged that, "[a]s the owner of a presumptively valid patent, [a patentee is] entitled to pursue litigation to defend its patent. That [the patentee] trie[s] to settle … action with [the defendant] prior to filing suit cannot be construed as form of extortion. Rather than an abuse of process, the pursuit of settlement is a valid, legitimate and worthy part of the process." *Bayer AG v. Sony Elecs.*, 229 F. Supp. 2d 332, 368-369 (D. Del. 2002) (emphasis added); *see also GN Netcom, Inc. v. Callpod, Inc.*, 2012 U.S. Dist. LEXIS 132001, at *5-*7 (D. Colo. Sept. 17, 2012) (rejecting abuse of process claim based on allegation that "complaint was motivated solely by the ulterior purpose of gaining unfair leverage in other pending litigation between the parties," and acknowledging that "filing a complaint not justified in fact or law alone is not enough to amount to abuse of process").

Moreover, Newegg's newly added allegations that Data Carriers is affiliated with the plaintiffs in the other cases involving Newegg (plaintiffs TQP and SFA) are no more relevant and no less conclusory than they were the first time around. Those are different cases involving entities legally unrelated to Data Carriers. Indeed, despite its attempt to do so, no facts are alleged to show any common ownership or control between Data Carriers and the plaintiffs in the other cases. Newegg only alleges that Guy Fielder, the indirect owner of Data Carriers, owns a different company that had some prior relationship with IP Nav and purportedly its chairman. (*See* D.I. 20 ¶¶ 32-35.)[2] The only "connection," if a connection at all, between the TQP and SFA plaintiffs and Data Carriers is that each has independently retained third-party IP Navigation Group, LLC ("IP Nav") as an outside advisor to assist with licensing and enforcement strategies. But even accepting Newegg's "on information and belief" allegation that the entities are or were "created, owned, or controlled" by IP Nav and Erich Spangenberg, the Chairman of IP Nav, as true (*id.* ¶38), Newegg's allegations are insufficient.

As set forth below, even if Mr. Spangenberg gained from each of these transactions, such purported activity does not, and cannot, create a claim for abuse of process. Beyond that, Newegg's counterclaim discloses that Data Carriers merely "engaged" IP Nav and is an IP Nav "client." (D.I. 20, Ex. N.) Newegg has no basis to allege an abuse of process claim against Data Carriers (or IP Nav) based on lawsuits filed by different entities – regardless of any common purported ownership interests between them.

---

[2] Any suggestion by Newegg that Mr. Fielder has no real interest in this case is completely unsupported. Mr. Fielder has a long and well-respected history working with high technology companies and developing innovative computer-based systems, which has resulted in his securing of interests in various patents. As Newegg's own exhibits to their Amended Answer and Counterclaims demonstrate, Mr. Fielder was one of the original employees of Compaq computers. (D.I. 20, Ex. K.)

Second, Newegg's counterclaim based on a past auction and future auctions fares no better. The past auction did not even involve this lawsuit. Again, Newegg's own exhibit to its counterclaim references several litigations subject to the auction, but this case is not one of them. (*Id.*, Ex. O.) Nor can there be a claim based on future auctions, which is nothing more than a request for an advisory opinion. Moreover, the auctions (and settlements in general) offer a potentially mutually agreeable way for litigating parties to resolve their disputes. Newegg is free to refuse to participate in the auctions, or reject any settlement overtures. And, in any event, it cannot be an abuse of process to engage in extra-judicial attempts to settle (through an auction or discussions between the parties) disputes between the parties. *Bayer Ag*, 229 F. Supp. 2d at 368-369 ("the pursuit of settlement is a valid, legitimate and worthy part of the process").

Applicable case law demonstrates that the holder of a patent has an absolute right to file suit to enforce and protect its own interests. The act of suing cannot, of itself, be considered a coercive act, and cannot trigger an abuse of process claim. Newegg's third counterclaim for relief should be dismissed with prejudice.[3]

## III. BACKGROUND

Data Carriers filed its original complaint for patent infringement on July 19, 2012. (D.I. 1.) The Complaint alleges that Newegg infringes the '198 patent entitled "Proactive Presentation of Automatic Features to a Computer User." (*Id.*, Ex. A). The '198 patent is generally directed to systems and methods of automating operations or features of a computer. (*Id.*) Data Carriers is the owner by assignment of the patent. (*Id.* ¶ 6.) The '198 patent was originally owned by Symantec Corporation, a company founded in 1982 and which is one of the largest software companies in the world. (*Id.*)

---

[3] Third-party counterclaim defendant IP Nav has separately moved to dismiss. (D.I. 21-22.) Data Carriers hereby joins IP Nav's motion to dismiss and incorporates those arguments by this reference as if set forth in full herein.

Newegg's response to the Complaint was to file an answer and counterclaim. (D.I. 8.) Data Carriers and IP Nav filed motions to dismiss Newegg's counterclaim for abuse of process. (D.I. 16-19.) Rather than oppose the motions, on November 16, 2012, Newegg filed the instant First Amended Answer and Counterclaim, mooting the pending motions to dismiss. (D.I. 20.) Rather than focusing on the merits of Data Carriers' complaint, Newegg's amended answer and counterclaim includes wide-ranging, speculative allegations against IP Nav, non-party Erich Spangenberg, and, to a lesser extent, Data Carriers, in the form of an alleged claim for relief for abuse of process. The third claim for relief argues, among other things, that:

- Newegg is subject to two other expensive patent infringement suits brought by SFA Systems, LLC ("SFA") and TQP Development, LLC ("TQP"), both of which are allegedly controlled by Erich Spangenberg, the founder of IP Nav. (D.I 20 ¶¶ 23-36.)

- IP Nav and Data Carriers are "patent trolls" whose only source of revenue is lawsuits calculated to obtain "quick nuisance value settlements." (*Id.* ¶ 40.)

- On June 25, 2012, third party ICAP Patent Brokerage issued a press release announcing that "certain clients of IPNav" were auctioning covenants not to sue to various defendants in several lawsuits (not including the present lawsuit between Data Carriers and Newegg). (*Id.* ¶ 46.)

- Although Newegg was named in connection with the SFA and TQP actions, Newegg admits that the auction "did <u>not</u> ostensibly offer a covenant not to sue Newegg in connection with the present case." (*Id.* (emphasis added).)

- In Newegg's view, the auction was a "perverse abuse of the American judicial system" and "is a perfect vignette to highlight the improper and coercive purposes for which the present Data Carriers lawsuit was filed and wielded against Newegg." (*Id.* at 47.)

- The current lawsuit seeks to "coerce" Newegg to settle this suit and the *SFA* and *TQP* lawsuits, and participate in the past auction and potential future auctions, and to add "inventory" to the past auction and potential future auctions. (*Id.* at 51.)

As discussed in detail below, Newegg fails to plead facts to support its allegations that Data Carriers either improperly sought to leverage its complaint for purposes outside of this lawsuit, that the past auction or future auctions are in any way improper or even relevant to this case, or that Newegg (or anyone else) was ever offered a covenant-not-to-sue regarding this case at the Auction. Newegg's third counterclaim should, therefore, be dismissed.

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), this Court may dismiss a claim for failure to state a claim upon which relief may be granted." In order to survive such a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint such as the instant cross-claim, that pleads facts that are merely consistent with the allegations of liability, "stop[] short of the line between possibility and plausibility of entitlement of relief." *Id.*

The purpose of a motion to dismiss is to test the sufficiency of the complaint. *Houlihan v. Sussex Tech. School Dist.*, 461 F. Supp. 2d 252, 262 (D. Del. 2006). While all reasonable factual inferences are to be viewed in the light most favorable to the plaintiff under *Neitzke v. Williams*, 490 U.S. 319, 326 (1989), the counterclaimant's "obligation [is] to provide the grounds of his entitlement to relief," which necessarily "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Court need not accept as true, [t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.*

In order to state a claim for abuse of process under Delaware law, "some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself must be proven." *Spence v. Spence*, 2012 Del. Super. LEXIS 188, *10 (Del. Super. Ct. Apr. 20, 2012). In particular, an abuse of process claim requires: (1) "an ulterior purpose"; and (2) "a willful act in

6

the use of the process not proper in the regular conduct of the proceedings." *Id.* "[S]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required. Merely carrying out the process to its authorized conclusion, even though with bad intentions, does not result in liability." *Id.*

V.   **ARGUMENT**

A plain reading of the law on abuse of process dictates dismissal of the third counterclaim against Data Carriers. As the owner of the '198 patent, Data Carriers has a statutory right to initiate the process of this lawsuit, and its willingness to engage in early settlement discussions is a legitimate corollary to that process. As discussed above, the Court has previously acknowledged that there is no abuse of process to engage in the same actions undertaken by Data Carriers in this case. In *Bayer AG*, for instance, the Court rejected an abuse of process claim that alleged that the plaintiff had an "ulterior purpose in filing th[e] lawsuit and pursuing th[e] litigation … to coerce a settlement from [the defendants]." *Bayer AG*, 229 F. Supp. 2d at 368. The defendants alleged that the plaintiff engaged in abuse of process by "initiat[ing] and continu[ing] th[e] litigation, even though it was in possession of facts that affirmatively undermined its claim …." *Id.* The Court held that the defendants' allegations were insufficient to state a claim for abuse of process. Importantly, the Court held that "[a]s the owner of a presumptively valid patent, [the plaintiff] was entitled to pursue litigation to defend its patent," and that, "rather than an abuse of process, the pursuit of settlement is a valid, legitimate and worthy part of the process." *Id.* at 368-369.

Newegg's counterclaim adds nothing that suggests that the result in *Bayer AG* is not equally applicable to this case. Data Carrier has initiated a lawsuit, and has made efforts to settle the case. Those actions are not an abuse of process as a matter of law. *See id.*

The fact that other entities have also sued Newegg does not change the analysis. Even taking Newegg's "information and belief" allegation that Data Carriers is a related company to TQP and SFA as true, (D.I. 20 ¶¶ 24-35 and 38), which it is not, no law precludes each of those entities and Data Carriers from instituting process for patents they own and which are presumptively valid. Indeed, the filing of a complaint has categorically been found to not be an abuse of process. *See RRR Farms, LTD v. Am. Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 134 (Tex. App. 1997) ("filing a complaint is not an improper or illegal use of process"); *see also Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. 1983) (dismissing abuse of process claim where plaintiff failed to allege (1) a willful and improper act in the use of process; (2) any form of coercion; and (3) a collateral advantage to defendants arising from said coercion). Newegg simply has no basis to allege an abuse of process claim against Data Carriers (or IP Nav) based on lawsuits filed by different entities.

Nor can Newegg salvage its counterclaim by including allegations of a past auction not involving this case, or speculations about future auctions that might implicate it and Data Carriers or any other party it contends is part of the alleged "campaign" to coerce Newegg. The past auction did not involve this case. Newegg does not dispute this. (*See id.* ¶ 46 ("the auction did not ostensibly offer a covenant not to sue Newegg in connection with this present case").) Because the past auction did not involve <u>this case</u>, Newegg cannot allege any improper use of this current process, that this current process was used to coerce any actions with respect to Newegg, or that Data Carriers obtained any benefit from the past auction in this current process. Any one of those deficiencies alone is sufficient to defeat Newegg's counterclaim based on the past auction. *See Spence*, 2012 Del. Super. LEXIS 188, at *10-*11 (*citing Read v. Carpenter*, 1995 WL 945544, at *1 (Del. Super. June 8, 1995) and denying an abuse of process claim

because of a failure to show "1) a willful and improper act in the use of process; 2) any form of coercion; and 3) a collateral advantage … arising from said coercion.").

Moreover, Newegg cannot make an adequate showing. There can be no coercion because neither Newegg nor anyone else was *forced* to participate in the past auction or buy a covenant-not-to-sue at the auction. There also was no advantage to Data Carriers (or IP Nav, for that matter) in selling covenants-not-to-sue at the past auction because the auction did not involve this case, and even if it did, the sale of a covenant is arguably a *disadvantage*, in that Data Carriers would be releasing its claims against Newegg.

Newegg's allegations regarding future auctions or adding "inventory" to any such future auction have no basis either. Newegg's allegations in this context are complete speculation, and nothing more than a request for an advisory opinion. Newegg points to no concrete future auction relevant to this case. It merely speculates that there might be a future auction, of which this case would potentially be included as "inventory," that would be coercive and give rise to an abuse of process claim. Delaware courts, however, will not issue advisory opinions. *See, e.g.,* 28 U.S.C. §2201(a) (Declaratory Judgments Act mandates that there must be an "actual controversy"); *see also Rollins Intern. Inc. v. International Hydronics Crop.* 303 A.D.2d 660, 662-63 (Del. 1973) (an actual controversy must exist before a Delaware court can issue a declaratory judgment). The Court should reject Newegg's invitation to speculate as to the impact and relevance a future auction might have to the present case.

Data Carriers, as the owner of the '198 patent, has a statutory right to enforce its patent through litigation. Newegg's attempt to limit that right under the cover of a state law claim for abuse of process has no merit.

## VI. CONCLUSION

For the reasons set forth above, Data Carriers respectfully requests that the Court dismiss with prejudice Newegg's third counterclaim for abuse of process.

|  |  |
|---|---|
|  | BAYARD, P.A. |
| November 30, 2012 | /s/ Stephen B. Brauerman |
|  | Richard D. Kirk (rk0922) |
| OF COUNSEL: | Stephen B. Brauerman (sb4952) |
|  | Vanessa R. Tiradentes (vt5398) |
| Marc A. Fenster | 222 Delaware Avenue, Suite 900 |
| Benjamin T. Wang | Wilmington, DE 19801 |
| Adam S. Hoffman | (302) 655-5000 |
| RUSS, AUGUST & KABAT | rkirk@bayardlaw.com |
| 12424 Wilshire Boulevard, 12th Floor | sbrauerman@bayardlaw.com |
| Los Angeles, CA 90025-1031 | vtiradentes@bayardlaw.com |
| (310) 826-7474 |  |
| mfenster@raklaw.com | **ATTORNEYS FOR PLAINTIFF** |
| bwang@raklaw.com | **DATA CARRIERS, LLC** |
| ahoffman@raklaw.com |  |