**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DATA CARRIERS, LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>NEWEGG INC.,<br><br>       Defendant.<br><br>NEWEGG INC.,<br><br>       Counterclaimant,<br><br>   v.<br><br>DATA CARRIERS, LLC and<br>IP NAVIGATION GROUP, LLC,<br><br>       Counterdefendants. | C.A. No. 12-942-LPS |

**DATA CARRIERS LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
NEWEGG'S THIRD CLAIM FOR RELIEF IN ITS FIRST AMENDED
COUNTERCLAIM**

January 9, 2013

OF COUNSEL:

Marc A. Fenster
Benjamin T. Wang
Adam S. Hoffman
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025-1031
(310) 826-7474
mfenster@raklaw.com
bwang@raklaw.com
ahoffman@raklaw.com

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

**ATTORNEYS FOR PLAINTIFF
DATA CARRIERS, LLC**

# TABLE OF CONTENTS

I.  **INTRODUCTION:** A willingness to engage in settlement talks, an alleged "coercive" auction that did not involve this case, and speculative future auctions cannot form the basis for an abuse of process claim…………………1

II.  **ARGUMENT**……………………………………………………………………3

III.  **CONCLUSION**……………………………………………………………….9

# TABLE OF AUTHORITIES

**CASES**

*Bayer AG v. Sony Elecs.*
   229 F. Supp. 332 (D. Del. 2002) ........................................................................... 2, 4, 6

*Bull v. McCuskey*
   96 Nev. 706 (1980) ......................................................................................................... 5

*Campbell v. Lyon*
   26 Fed. Appx. 183 (4th Cir. 2001) ................................................................................. 7

*GN Netcom, Inc. v. Callpod, Inc.*
   No. 11-cv-03271-RBJ, 2012 U.S. Dist LEXIS 132001 (D. Colo. Sept. 17, 2012) ................ 2, 6

*Greene v. Emersons, Ltd.*
   86 F.R.D. 66 (S.D.N.Y. 1980) ........................................................................................ 8

*Hofferica v. St. Mary Med. Ctr.*
   826 F. Supp. 2d 813 ....................................................................................................... 8

*Nix v. Sawyer*
   466 A.2d 407 (Del. Super. 1983). ................................................................................... 3

*Outboard Marine Corp. v. Pezetel*
   461 F. Supp. 384 (D. Del. 1978) ..................................................................................... 2

*RRR Farms, LTD v. Am. Horse Protection Ass'n, Inc.*
   957 S.W.2d 121 (Tex. App. 1997) ......................................................................... 4, 7, 8

*Spence v. Spence*
   No. K11C-06-035 JT V, 2012 Del. Super. LEXIS 188 (Del. Super. Ct. Apr. 20, 2012) ....... 3, 8

*STMicroelectronics N.V. v. Agere Sys.*
   No. 08C-09-099 MMJ, 2009 Del. Super. LEXIS 184 (Del. Super. Ct. May 19, 2009) ......... 8, 9

*Wachter v. Gratech Co., Ltd.*
   608 N.W.2d 279 (N.D. 2000) ......................................................................................... 7

**STATUTES**

Rule 12(b), F.R.Civ.P. .......................................................................................................... 8

**I. INTRODUCTION: A willingness to engage in settlement talks, an alleged "coercive" auction that did not involve this case, and speculative future auctions cannot form the basis for an abuse of process claim.**

The issue before the Court is whether defendant Newegg Inc.'s ("Newegg") third amended counterclaim for abuse of process states a valid claim for relief. Unfortunately, identifying what exactly Newegg contends is an abuse of process involves a detour through nearly thirty-paragraphs of irrelevant allegations about other patent cases involving Newegg (the "*SFA* and *TQP* matters"); Data Carriers' licensing agent, IP Navigation Group, LLC ("IP Nav"); IP Nav's founder and various entities allegedly associated with him and members of his family; a breach of contract case involving IP Nav's founder (the "*Taurus IP* litigation"); Data Carriers' manager, Guy Fielder, and his alleged past business activities; a past auction for covenants not to sue in other cases; and so on. (*See* D.I. 20 ¶¶ 20-54.)

Not until paragraph 51 of Newegg's amended counterclaim (and page 15 of its opposition brief) does it attempt to explain how Data Carriers' allegedly "initiated this present lawsuit for an ulterior purpose and willfully filed and wielded the Complaint in a manner improper in the regular conduct of proceedings. . . ." (D.I. 20 ¶ 51.) Newegg alleges that the improper acts by Data Carriers and IP Nav consisted of "fil[ing] this lawsuit and sen[ding] the Complaint to" allegedly:

- "coerce a settlement and license fee";

- "coerce a settlement in the *SFA* and *TQP* matters";

- "coerce Newegg to attend the … July 26, 2012 auction and/or future auctions to bid on a covenant not to be sued"; and

- "add another covenant not to sue Newegg to the inventory up for auction … at the July 26, 2012 auction and/or future auctions."

1

(*Id.*; *see also* D.I. 25 at 18-19 ("Data Carriers and IP Nav have no absolute right to file a complaint against Newegg and wield that complaint in a manner that is improper in the normal course of proceedings, and which seeks to coerce a nuisance settlement, to draw attention to and coerce Newegg to attend and participate in an auction, to add to its auction inventory, and/or coerce a settlement in other pending matters.").)

But none of Newegg's alleged improper acts supports a claim for abuse of process. It is not abusive for Data Carriers to discuss settlement with Newegg. "[R]ather than an abuse of process, the pursuit of settlement is a valid, legitimate and worthy part of the process." *Bayer AG v. Sony Elecs.*, 229 F. Supp. 332, 368-69 (D. Del. 2002). Nor should the pursuit of settlement become improper if a party attempts to settle all of its claims against another party, as would be the case if Newegg's suggestion that SFA, TQP, and Data Carriers are commonly controlled were accepted. Further, even under that assumption, Newegg fails to allege that this case is being used to gain unfair leverage in the *SFA* and *TQP* matters. *See GN Netcom, Inc. v. Callpod, Inc.*, No. 11-cv-03271-RBJ, 2012 U.S. Dist LEXIS 132001, at *5-*7 (D. Colo. Sept. 17, 2012) (dismissing abuse of process claim because defendants "failed to identify how th[e] complaint [was] being used improperly to create unfair leverage" in "other pending litigation between the parties").

Likewise, the past auction and any future auction cannot give rise to an abuse of process claim. "While, for the purpose of a motion to dismiss, facts well pleaded must be taken as true, unsupported conclusions of pleader may be disregarded, especially when limited or negated by the substance of the facts alleged." *Outboard Marine Corp. v. Pezetel*, 461 F. Supp. 384, 403 (D. Del. 1978). This case could not have coerced Newegg's participation in the past auction because this case did not exist at the time the auction was announced, Newegg alleges nowhere

that a covenant for this case was included in the auction, and the auction press release attached to Newegg's amended answer and counterclaim includes no reference to this case. Even if this case was part of the auction or filed in order to add to the auction inventory, Newegg fails to allege how the auction, which is simply another way to settle litigation, gives rise to an abuse of process claim. (D.I. 20 ¶47.) As for future auctions, Newegg's allegations are speculative and invite an advisory opinion, and thus fail. Newegg apparently agrees. Its opposition brief makes no attempt to defend or even reference the speculative future auctions.

Data Carriers' efforts to enforce its rights to the presumptively valid patent-in-suit do not give rise to an abuse of process claim. Newegg's concerns about the "tax" on its resources from litigation are best addressed by focusing on the merits of this case rather than detouring to unrelated issues involving different patents, cases, parties, and facts. Data Carriers respectfully requests that the Court dismiss Newegg's amended abuse of process counterclaim with prejudice.

## II. ARGUMENT

Newegg's abuse of process claim is based on its contention that "Data Carriers and IP Nav have abused the legal process in instituting this action and wielding the infringement complaint in the manner that they have," *i.e.*, to coerce Newegg into settling this matter and the *SFA* and *TQP* matters, to participate in the past and/or future auctions of covenants not to sue, and to add to this case to the auction inventory. (D.I. 25 at 18-19.) Newegg's allegations simply cannot support a claim for abuse of process under Delaware law.

The crux of an abuse of process claim under Delaware law is a "willful and improper act in the use of process." *Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. 1983). *See also Spence v. Spence*, No. K11C-06-035 JTV, 2012 Del. Super. LEXIS 188, at *10 (Del. Super. Ct. Apr. 20, 2012) ("[S]ome definite act or threat not authorized by the process, or aimed at an objective not

3

legitimate in the use of the process, is required. Merely carrying out the process to its authorized conclusion, even though with bad intentions, does not result in liability."); *RRR Farms, LTD v. Am. Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 134 (Tex. App. 1997) ("Merely issuing or procuring process, even if accompanied by malicious intent or without probable cause is not actionable.").

Data Carriers' filing of this lawsuit and subsequent efforts to seek early settlement of its claims against Newegg cannot give rise to an abuse of process claim. There being no dispute that Data Carriers is the owner of the asserted patent (D.I. 20 ¶¶ 4, 10), these acts are clearly legitimate and cannot constitute an abuse of process, regardless of Data Carriers' alleged intentions. As aptly stated by this Court in rejecting a similar abuse of process claim in *BayerAG*:

> As the owner of a presumptively valid patent, [Plaintiff] was entitled to pursue litigation to defend its patent. That [Plaintiff] tried to settle this action with [Defendant] prior to filing suit cannot be construed as form of extortion. Rather than an abuse of process, the pursuit of settlement is a valid, legitimate and worthy part of the process.

229 F. Supp. at 368-69.

Newegg's argument that *Bayer AG* is inapplicable to this case because Data Carriers initiated settlement discussions only *after* filing its complaint is nonsensical and unsupported. (*See* D.I. 25 at 15 ("Data Carriers ignores the fact that in *Bayer* the lawsuit was filed *after* settlement discussions were pursued and resulted in an impasse. . . . [T]his fundamental difference makes the situation [in this case] highly coercive and 'can be construed as a form of extortion.'")). This is a prime example of a distinction without a difference. Nowhere in *Bayer* does the Court indicate that the timing of settlement discussions has any bearing on their legitimacy. Indeed, Newegg has not and cannot cite to a single case which deems improper the initiation of post-filing settlement discussions. Such a rule would be absurd, and would directly

4

contravene federal and state policy strongly favoring settlement of claims irrespective of the stage of litigation.

To the extent that Newegg's abuse of process claims are based on Data Carriers' alleged intent to leverage a "nuisance settlement," these claims still fail. In the case relied upon by Newegg, *Bull v. McCuskey*, 96 Nev. 706 (1980), the defendant doctor's abuse of process claim alleged that plaintiff instituted a malpractice suit against him for the ulterior purpose of coercing a nuisance settlement while knowing that there was no basis for a claim of malpractice. *Id.* at 707. In affirming the judgment in favor of defendant, the court found that plaintiff's offer to settle "for the minimal sum of $750 when considered in the light of his failure adequately to investigate before deciding to file suit and the total absence of essential expert evidence" supported the jury's finding of an abuse of process. *Id.* at 709. In this case, however, Newegg has failed to allege any such facts indicating that Data Carriers is merely seeking a nuisance settlement. Newegg's contention that "Data Carriers and IP Nav have expressed no interest in learning more about the technical operations of Newegg's website and the accused 'autocomplete' feature" is unavailing. Even assuming this is true, it says nothing about the sufficiency of Data Carriers' pre-suit investigation, nor its belief regarding the validity and value of its claims against Newegg. Furthermore, this case is still in the pleading stage – learning more about Newegg's accused system takes place only after discovery commences, and exchanges are made in advance of Data Carriers' service of its initial infringement contentions.

Nor has Newegg sufficiently alleged that Data Carriers stood to obtain a collateral advantage from the settlement of the *SFA* and *TQP* matters. These matters concern different entities and patents unrelated to the '198 patent asserted in this lawsuit. Newegg's attempts to link Data Carriers to SFA and TQP through conclusory, unsupported and irrelevant allegations

about IP Nav and IP Nav's founder cannot cure this fundamental deficiency.[1] As acknowledged by Newegg, IP Nav provides advisory services to many different clients to assist them in licensing their patent portfolios. (D.I. 25 at 2; D.I. 20-1, Ex. C (identifying SFA, TQP, and Data Carriers as "clients" of IP Nav); D.I. 20-1, Ex. B (confirming that Data Carriers merely "engaged" IP Nav and is an IP Nav "client.")). The mere fact that Data Carriers, SFA, and TQP are all clients of IP Nav and have each initiated separate patent infringement suits against Newegg cannot possibly support Newegg's contention that the entities are related, or that Data Carriers would benefit through a settlement of the unrelated *SFA* and *TQP* matters.

Even assuming that SFA, TQP, and Data Carriers are related or commonly controlled, which they are not, Newegg is essentially arguing that efforts to reach a global settlement of all claims (claims in the SFA, TQP and Data Carriers cases) amounts to an abuse of process. As recognized in *Bayer AG* (and fundamental legal principles), settlements are a valid and worthy "part of the process." A global resolution of all claims should be even more so. In any event, Newegg alleges no use of this case to gain unfair leverage in the *SFA* and *TQP* matters. *See GN Netcom, Inc.*, 2012 U.S. Dist LEXIS 132001, at *5-*7 (dismissing abuse of process claim where defendants "failed to identify how th[e] complaint [was] being used improperly to create unfair leverage" in "other pending litigation").

---

[1] A substantial portion of Newegg's counterclaim and opposition brief is spent condemning IP Nav and its alleged "'questionable' business practices," including IP Nav's founder's purported "mantra, 'sue first, ask questions later.'" (Newegg improperly attributes this "mantra" to IP Nav's founder. But Newegg's own exhibit to its complaint (D.I. 20-1, Ex. A) reveals that the statement is from the author of the article and not IP Nav's founder.) Newegg has even dedicated an entire section to IP Nav's prior litigation in the *Taurus IP* matter. (*See* D.I. 25 at 2, 5-6, 15.) Even assuming these allegations are true, they are irrelevant. The alleged practices of IP Nav with respect to separate, unrelated matters, have no relevance to Data Carriers' efforts to enforce its patent in this case.

Newegg has also failed to plead sufficient facts to establish that the past auction bears any relevance to the instant lawsuit, let alone that Data Carriers stood to gain some type of "collateral advantage" from participation by Newegg. Newegg acknowledges that a covenant not to sue with respect to this lawsuit could not have been among those announced in the press release as being part of the auction (D.I. 25 at 17), and has even admitted that "the auction did not ostensibly offer a covenant not to sue Newegg in connection with this present case" (D.I. 20 ¶ 46). Newegg attempts to qualify this fatal admission by pointing to its use of the word "ostensibly," asserting that, while there is no evidence that this case was part of the auction, "no public documents verify that a covenant regarding this case was <u>not</u> up for auction." (D.I. 25 at 17.) Newegg's argument turns the federal pleading standards on their head. Newegg must plead *specific* facts to support its claims. The absence of a negative fact, by itself, does not cure Newegg's speculative allegations.

In any event, Newegg, of its own volition, declined to participate in the past auction (D.I. 25 at 16), and was therefore not coerced into doing anything. Any purported advantage to Data Carriers arising from the past auction, or any future auction for that matter, is thus purely hypothetical and cannot be used to support an abuse of process claim. To put it another way, Newegg cannot establish that it has suffered any damages—a crucial element to any tort claim. *See Wachter v. Gratech Co., Ltd.*, 608 N.W.2d 279, 288 (N.D. 2000) ("the plaintiff still must show actual damages suffered as a result of the abuse of process"); *RRR Farms*, 957 S.W.2d at 133-34 (the third element required to establish the tort of abuse of process is damage to the plaintiff as a result of defendant's illegal or improper use of process); *Campbell v. Lyon*, 26 Fed. Appx. 183, 191 (4th Cir. 2001) (same). Moreover, any damage is unlikely. Newegg itself

concedes that "<u>Newegg</u> stood to benefit from the acquisition of a covenant not to be sued in [the SFA and TQP] matters." (D.I. 25 at 4 (emphasis added).)

In its final and what would be its third attempt to save its deficient abuse of process claims, Newegg asks to conduct discovery with respect to Data Carriers' and IP Nav's intent. (D.I. 25 at 20.) However, Delaware law makes clear that bad or malicious intentions are irrelevant to a claim for abuse of process. *Spence*, 2012 Del. Super. LEXIS 188, at *10; *RRR Farms*, 957 S.W.2d at 134. Further, as discussed above and in Data Carriers' motion to dismiss, Newegg's claims fail even assuming its allegations are true. *See Hofferica v. St. Mary Med. Ctr.*, 826 F. Supp. 2d 813, 818 (rejecting plaintiff's attempt to justify her failure to state a claim by asserting the need to first engage in discovery; "the purpose of Rule 12(b)(6) is to 'streamline litigation by dispensing with needless discovery and factfinding'"); *see also Greene v. Emersons, Ltd.*, 86 F.R.D. 66, 73 (S.D.N.Y. 1980) ("A defendant has the right, under Rule 12(b), F.R.Civ.P., to challenge the legal sufficiency of the complaint's allegations against him, without first subjecting himself to discovery procedures."). Newegg must first state a valid claim for relief before it is entitled to discovery on such claim—not the other way around.

The absence of any merit to Newegg's claim (and futility of amendment) is reflected by the fact that in Newegg's entire 25-page opposition brief, it manages to identify only one case in which an abuse of process claim survived the pleading stage in a case related to patent infringement (and barely related at that). (D.I. 25 at 9, citing *STMicroelectronics N.V. v. Agere Sys.*, No. 08C-09-099 MMJ, 2009 Del. Super. LEXIS 184, at *11 (Del. Super. Ct. May 19, 2009).) *STMicroelectronics*, however, does not support Newegg's attempt to stretch an abuse of process claims to the facts alleged here. In *STMicroelectronics*, the plaintiff argued that the defendant had abused process by instituting patent infringement proceedings before the ITC and

8

another district court <u>over a patent to which the plaintiff was "already licensed</u>." (Ex. 1 ¶ 49 (complaint in *STMicroelectronics*, attached hereto)); *see also STMicroelectronics,* 2009 Del. Super. LEXIS 184, at *3.  This case is nothing like *STMicroelectronics*.  There is no allegation that Newegg is already licensed to the patent-in-suit.  Rather, this suit involves efforts by Data Carriers to enforce its presumptively valid patent through litigation, while remaining open to extra-judicial attempts to settle the parties' disputes.

## III. CONCLUSION

In sum, Data Carriers, as the owner of the '198 patent, has a statutory right to enforce its patent through litigation, and Newegg's attempt to limit that right under the cover of a state law claim for abuse of process has no merit.  Data Carriers respectfully requests that the Court dismiss with prejudice Newegg's third counterclaim for abuse of process.

January 9, 2013                                        BAYARD, P.A.

                                                        /s/ Stephen B. Brauerman
                                                       Richard D. Kirk (rk0922)
                                                       Stephen B. Brauerman (sb4952)
                                                       Vanessa R. Tiradentes (vt5398)
                                                       222 Delaware Avenue, Suite 900
                                                       Wilmington, DE 19801
                                                       (302) 655-5000
                                                       rkirk@bayardlaw.com
                                                       sbrauerman@bayardlaw.com
                                                       vtiradentes@bayardlaw.com

                                                       **ATTORNEYS FOR PLAINTIFF
                                                       DATA CARRIERS, LLC**

OF COUNSEL:

Marc A. Fenster
Benjamin T. Wang
Adam S. Hoffman
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025-1031
(310) 826-7474
mfenster@raklaw.com
bwang@raklaw.com
ahoffman@raklaw.com